GEORGE F. BOYD, APPELLEE, V. GALLAWAY FLOUR MILL & ELEVATOR COMPANY ET AL., APPELLANTS.

FILED NOVEMBER 9, 1909.  No. 15,785.

Highways: TOWNSHIP OFFICERS: POWERS.  In counties under township organization, the care and maintenance of public highways devolves upon the township and road officers.  Where a public road had been duly established and traveled by the public for 18 years, and a part thereof crosses low land which is liable to be overflowed by reason of water being backed by a milldam, the roadway being graded up, it is within the power and authority of the proper officers, in the interest of public safety and convenience, to remove culverts in such grade and close the opening, thus preventing the flowing of the water through and destroying the grade.

APPEAL from the district court for Antelope county: ANSON A. WELCH, JUDGE.  *Affirmed.*

*Weaver & Giller* and *O. A. Williams,* for appellants.

*J. F. Boyd* and *W. A. Meserve, contra.*

REESE, C. J.

From the pleadings and evidence in this case it appears that defendant, the Gallaway Flour Mill & Elevator Company, is the owner of a flouring mill at Oakdale, Nebraska; that its machinery is propelled by water power created by the construction of a dam across a stream; that the water of said stream has for many years at irregular intervals been backed up and caused to overflow the land of plaintiff; that a public highway established in 1888 passes over plaintiff's land between the stream and that portion which is flooded as aforesaid; that, for the purpose of rendering the road passable for the public, it has been necessary to elevate the grade by grading up the roadbed; that during a portion of the time the grade has been carried entirely across the depression, so as to prevent the inflow of water when the stream was high, and

at other times a bridge or culvert has been maintained, so as to allow the water to collect upon the land of plaintiff, thereby forming a reservoir, which was of advantage to defendant's mill. It is conceded that no legal steps have ever been taken by *ad quod damnum* proceedings or otherwise to render the overflow rightful, or give the defendant the legal right to occupy the property with the surplus water, but it is insisted that by user and occupancy for more than 10 years defendant has obtained the right by limitation. It was claimed by plaintiff that, prior to the commencement of this suit, the water had so injured and damaged the roadway by washing and cutting through the culvert as to render the road unsafe and dangerous, and on the 24th of March, 1906, the township board, then in session, made the following order: "Oakdale, Neb., March 24, 1906. Special meeting of the township board of Oakdale township. Board met pursuant to call at the clerk's office, and adjourned to the office of Geo. F. Boyd, and held a special meeting for the purpose of considering the closing of culvert and repairing road No. 10 south of outlots No. 5 and 6. Members present Warner, Rohanon and Cooper. Matter of repairing said road came up for discussion and hearing, and it appearing from the evidence and facts adduced that the culvert on said road just south of outlots No. 5 and 6 caused said road always to be in a bad state of repair and causes the water running through to saturate the road on both sides, that it will make, unless attended to at once, the road to become in bad shape and render it unfit for traffic to the safety of the public. Wherefore the board finds that said culvert is unnecessary and dangerous to the traffic, and that to put said road in proper repair it will be necessary to take out and fill said culvert. It was therefore moved, seconded and carried unanimously to take out and fill said culvert, and that the same be done forthwith, and that the road be put in a good state of repair, said road to be put in as good or better condition as it was prior to the time of putting in of said culvert. There being no further business, meet-

ing was adjourned." It appears that for some reason the township officers closed the culvert on a Sunday night. Whether this was to prevent injunction proceedings is not shown; but on Monday morning the culvert was found to be closed. Plaintiff, the landowner, instituted this suit to enjoin defendants and officers of the township from making an opening in the roadway and allowing the water to flow back upon his land. A restraining order was issued at or about the time of the commencement of the suit, and upon the trial a perpetual injunction was awarded.

A number of questions are presented by the briefs and arguments, but it is believed that one question must control the decision. The care and maintenance of public highways devolves upon township and road officers. The highway has been in constant use since its establishment in 1888, and it was within the power of the township officers to close the culvert and extend the grade or fill in as they might think expedient and for the public good. There can be no claim that the statute of limitation had run against the public, as it was stipulated that the road had been in constant use as a public highway since its establishment, a period of 18 years.

As the proper highway officers found it necessary to remove the culvert and close the embankment, which had been done on occasions before that time, we think this forecloses the question of the right of any one to interfere. It may be doubtful as to the right of plaintiff to maintain the action at all had the township officers defended. Instead of doing so, they made default and allowed the decree to go against them. They cannot complain even if dissatisfied. The decree of the district court was in the interest of the public, and will not be disturbed.

AFFIRMED.